UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MARQUES A. JOHNSON,**

    Plaintiff,

vs.                                              CASE NO. 8:20-cv-01370-TBB-JSS

**CHRIS NOCCO, in his official capacity
as Sheriff, Pasco County, Florida and
JAMES DUNN, in his individual capacity,**

    Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff MARQUES A. JOHNSON ("Plaintiff" or "Johnson"), by and through the undersigned attorneys, hereby responds to the Motion to Dismiss the Complaint by Defendants JAMES DUNN ("Dunn") and CHRIS NOCCO ("the Sheriff")(collectively "Defendants") with Supporting Memorandum of Law [Doc. 14]. As set forth in the following memorandum of law, the motion should be denied.

**MEMORANDUM OF LAW**

**I.    Introduction**

This is a case where Johnson, a passenger of a vehicle, was violently arrested by Pasco County Sheriff's Office deputies because he refused to immediately provide his name to Dunn, one of the deputies involved. In his first interaction with Johnson, Dunn incorrectly told Johnson that he was required to identify himself and if he did not, Dunn would "pull him out and he would go to jail for resisting." At all times, Johnson complied with the legitimate requests of law enforcement, he just did not want to give his name when there was no legal requirement that he do

1

so. As a result of his invoking of his constitutional right, Johnson was violently arrested despite his compliance. This arrest was consistent with the official policy of the Sheriff to "Fight" (encourage confrontation and violence with the community) and arrest passengers who refuse to identify themselves when there is no reasonable suspicion the person had committed, was committing or was about to commit any crime. It was also ratified by the Sheriff.

When Dunn demanded Johnson identify himself, he did not have any reasonable suspicion that Johnson had committed, was committing or was about to commit any crime or even any traffic violation. The charges were dismissed by Judge Poblick pursuant to Fla.R.Crim.P. 3.190(c)(4) because the undisputed facts did not establish a *prima facie* case of guilt against Johnson.

## II. Standard for A Motion to Dismiss.

When reviewing a complaint for facial sufficiency, a court must accept plaintiff's well pleaded facts as true, and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009).

## III. The Federal Claims

Counts I-IV of the Complaint allege violations of the United States Constitution, specifically the Fourth and Fourteenth Amendment. Despite Defendants' arguments, Plaintiff should be permitted to proceed with these claims for the reasons outlined below.

### A. The Arrest of Johnson Was Not Supported by Actual or Even Arguable Probable Cause.

Defendants first claim that there was actual probable cause for the arrest of Mr. Johnson. In fact, Dunn violated the clearly established law when he arrested Johnson under Fla. Stat §843.02 due to his pre-arrest refusal provide identity information immediately upon demand absent any reasonable suspicion.

At the time of Johnson's arrest, the law was clearly established that a law enforcement officer could not arrest an individual for failure to identify himself if the request for identification was not reasonably related to the circumstances justifying the stop. The Fourth Amendment provides

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Fourth Amendment rights were extended to protect against state action by the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691 (1961).

In *Brown v. Texas*, 443 U.S. 47, 52–53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) decided on June 25, 1979, a unanimous United States Supreme Court held that "the guarantees of the Fourth Amendment do not allow" law enforcement to "stop[ ] and demand[ ] identification from an individual without any specific basis for believing he is involved in criminal activity."

Similarly*, Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) is instructive where the Supreme Court held that

> [u]nder the Fourth Amendment, we have held, a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain

>that person briefly in order to 'investigate the circumstances that provoke suspicion. . . . Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. **But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.**

*Id.* (emphasis added). *See also Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure"); *Houston v. Hill*, 482 U.S. 451, 462-63 (1987)("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.")

In 2004, the United States Supreme Court categorically reaffirmed that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." *Hiibel v. Sixth Jud. Dist. Ct.,* 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004).

Similarly, the Eleventh Circuit recently reiterated that it was clearly established prior to the arrest at issue in this case that

>under the Fourth Amendment, an official can address questions to a person at any time, and that person is free "to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (quotation marks omitted). However, an official may conduct a brief, investigatory stop, otherwise known as a "*Terry* stop," if he has a reasonable suspicion of criminal activity. *See Jackson*, 206 F.3d at 1165. Though reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment nonetheless requires a minimum level of objective justification for an official to make a *Terry* stop. *Id.* This objective justification must exist at the onset of the stop. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Objective justification does not exist based on a mere refusal to cooperate with the official. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (stating that a person approached by the police may decline to

>  listen to the questions and go on his way without furnishing the necessary objective grounds for reasonable suspicion).

*Young v. Brady*, 793 Fed. Appx. 905, 909 (11th Cir. Nov. 7, 2019).

Further, the claimed basis for the arrest of Johnson was an alleged violation of §843.02, Fla. Stat. however, probable cause for an arrest under §843.02, Fla. Stat. cannot be based on mere words. *Olson v. Stewart*, 737 Fed.Appx. 478, 481 (11th Cir. 2018)("At the time of Ms. Olson's December 8, 2012 arrest, any reasonable officer would have known that probable cause for a violation of §843.02 could not be based on mere words."); *Davis v. Williams*, 451 F.3d 759, 765 (11th Cir. 2006)(collecting cases)("Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under §843.02."); *see also Burkes v. State*, 719 So. 2d 29, 30 (Fla. 2d DCA 1998)("An individual may properly refuse to give his name or otherwise identify himself to law enforcement when he has not been lawfully arrested, and prior to a lawful arrest." (internal citations omitted)).

The issue in this case is exactly the issue that the Tenth Circuit evaluated earlier this year in *Corona v. Aguilar*, 959 F.3d 1278, 1284 (10th Cir. 2020).

> The question before us, however, is not whether Defendant Aguilar violated the Fourth Amendment by *asking* Plaintiff to provide his ID. Defendant Aguilar's initial *request* for ID may have been lawful, but he could not — in the absence of "reasonable suspicion of some predicate, underlying crime" — lawfully *arrest* Plaintiff for concealing identity based solely on his failure or refusal to identify himself.

*Id.* (emphasis in the original). This is exactly what happened in this case, Defendant Dunn was permitted to ask Mr. Johnson for his identification but he could not arrest him for his refusal to provide it. Similarly, in *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008) the Eighth Circuit held that it was unlawful to arrest a passenger "for refusing to identify himself when he is not

5

suspected of other criminal activity and his identification is not needed to protect officer safety or to resolve whatever reasonable suspicions prompted the officer to initiate an on-going traffic stop or Terry stop."[1]

In short, Plaintiff has sufficiently pled the absence of probable cause for the arrest of Mr. Johnson under §843.02, Fla. Stat. because his refusal to immediately provide his name to Dunn did not represent any cause for his arrest.

> B. **The Law Was Clearly Established That The Arrest In This Case Was Unconstitutional.**

In a qualified immunity analysis, the Court looks to whether the law was clearly established that the conduct was unconstitutional at the time of the conduct at issue. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).

> "A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."

*Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291-92 (11th Cir. 2009) (citations omitted). "Exact factual identity with a previously decided case is not required," but rather, the key inquiry is whether the law provided the official with "fair warning" that his conduct violated the constitution. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (quotation marks omitted). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotation marks omitted). However, if there is no caselaw directly on point,

---

[1] While *Corona* and *Stufflebeam* are not Eleventh Circuit cases, they rely upon the same Supreme Court cases, including but not limited to *Brown* and *Hiibel* cited above to detail the clearly established Supreme Court law.

general statements of the law and the reasoning of prior cases may provide fair warning of unlawful conduct if they "clearly apply" to the novel factual situation at issue. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

In this case, there can be no doubt that the law was clearly established that the conduct at issue, arresting a passenger for failing to immediately identify themselves when the request for identification was in no way related to the circumstances justifying the stop, was unconstitutional. The cases clearly establishing this principle are set forth in the proceeding section and include but are not limited to the United State Supreme Court cases of *Hiibel v. Sixth Jud. Dist. Ct.,* 542 U.S. 177, 188, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)("an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop."); *Brown v. Texas*, 443 U.S. 47, 52–53, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (holding that "the guarantees of the Fourth Amendment do not allow" law enforcement to "stop[ ] and demand[ ] identification from an individual without any specific basis for believing he is involved in criminal activity."); *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)("the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.  But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released."); *Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure"); and *Houston v. Hill*, 482 U.S. 451, 462-63 (1987)("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."). As noted above, this

was also discussed in the Eleventh Circuit case of *Young v. Brady*, 793 Fed. Appx. 905, 909 (11th Cir. Nov. 7, 2019). Further, and again as noted above, the Eleventh Circuit has repeated noted that probable cause for an arrest under §843.02, Fla. Stat. cannot be based on mere words. *See Olson v. Stewart*, 737 Fed.Appx. 478, 481 (11th Cir. 2018)("At the time of Ms. Olson's December 8, 2012 arrest, any reasonable officer would have known that probable cause for a violation of §843.02 could not be based on mere words."); *Davis v. Williams*, 451 F.3d 759, 765 (11th Cir. 2006)(collecting cases)("Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under §843.02."); *see also Burkes v. State*, 719 So. 2d 29, 30 (Fla. 2d DCA 1998)("An individual may properly refuse to give his name or otherwise identify himself to law enforcement when he has not been lawfully arrested, and prior to a lawful arrest." (internal citations omitted)).

In short, there is no legitimate basis to assert that the law on arrests under Fla. Stat. §843.02 solely for refusing to identify oneself was in any way not clearly established. Thus, the motion to dismiss as to Counts I and III based upon qualified immunity should be denied.

    **C.**    **The Policy or Custom Counts Also Stand.**

Defendants' argument with respects to Courts II and IV claims that the complaint does not contain sufficient factual assertions. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), local government is liable, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To state a *Monell* claim, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that

8

constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "[A] municipality may be liable 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.' … In this context, the 'final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it.' *Jackson v. Corizon Health, Inc.*, No. 3:18-CV-1041-J-34JBT, 2019 WL 6525946, at *4 (M.D. Fla. Dec. 4, 2019)(citing Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) and *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002).

In this case, contrary to the assertion of the Sheriff, the complaint is not conclusory but rather sufficiently detailed. All of the Sheriff's deputies involved in this arrest, Dunn, Ramos and Pini, stated on camera to Johnson or his family members that person could be arrested for refusing to provide their name upon demand. Further, the complaint alleges that the Sheriff also ratified the arrest of Plaintiff because a supervisor informed Dunn that he should arrest Plaintiff. This is consistent with the allegation that the Sheriff had a pattern or practice of failure to train his officers in the requirement to arrest a passenger in a vehicle for refusing to identify themselves for resisting without violence and instead had an official policy of encouraging conflict. The Complaint alleges that shortly after the incident, Defendant Sheriff's office stated to the Tampa Bay Times that it had reviewed the arrest and found that the deputies acted appropriately. In addition, the Complaint alleges, in detail, that the Sheriff has created a "Constitutional Policing Advisor," the stated role of which is to guide the Sheriff through, and make recommendations on, issues related to accountability, and adherence to best practices, policies, and procedures; provide real-time

monitoring, analysis, and advice to agency staff on personnel investigations and disciplinary matters; review personnel investigations for objectivity and thoroughness; respond as necessary to critical incidents including in-custody deaths, deputy-involved shootings, and significant use of force incidents; review, evaluate, and provide input regarding critical incidents; perform research and analysis regarding constitutional precedents, case trends, rulings, and laws affecting law enforcement and custody operations. The Complaint alleges that in further ratification of the unconstitutional nature of this arrest, the Sheriff's Constitutional Policing Advisor, ignoring basic constitutional law concepts, ratified the arrest by stating that Plaintiff "was lawfully detained during the traffic stop, was lawfully required to provide his identification, and was lawfully arrested for Resisting Officer without Violence for refusing to do so."

Thus, the allegations in this complaint are not that a patrol deputy was making policy for the Sheriff. Rather, the allegations are that the arrest was made pursuant to a clear custom, policy and practice of the Pasco Sheriff, stated by all of the deputies on the scene, the supervisor they called on the phone, the Sheriff's Office itself when speaking with the media, and designated "Constitutional Policing Advisor," the person specifically provided with the policy making authority on the constitutionality of arrests. Johnson's arrest was pursuant to the policy, custom and practice of arresting passengers who refused to identify themselves to law enforcement. This is sufficient for the purposes of evaluating the complaint at the motion to dismiss stage. *See Haegele v. Judd,* No. 8:19-CV-2750-T-33CPT, 2020 WL 1640034, at *5 (M.D. Fla. Apr. 2, 2020)(holding that plaintiff has sufficiently pled the existence of a policy or custom within the Sheriff's Office at motion to dismiss stage and the Sheriff's arguments would be better suited at the summary judgment stage after plaintiff had been afforded discovery).

### D. Counts III and IV Properly Allege Due Process Violations Protected By The Fourteenth Amendment.

Defendants claim that Counts III and IV should be dismissed because they seek to assert claims related to the Fourteenth Amendment. The case relied upon by Defendant, *Gulbronson v. Anderson*, 2020 WL 2737005 (N.D. Fla. 2020), a case involving a *pro se* plaintiff, does not appear to represent the most recent law in the Eleventh Circuit on these issues. Simply put, contrary to the assertion of the Defendants the most recent law suggests that it is not that there is no a Fourteenth Amendment claim rather, "the Fourteenth Amendment standard is analogous to the Fourth Amendment's." *Patel v. Lanier County*, 2020 WL 4591270 at *4 (11th Cir. Aug. 11, 2020).[2] Thus, Counts III and IV are proper.

### IV. The State Law Claims

In addition to the federal claims, the Complaint alleges six state law claims in Counts V-X. Defendants argue that Plaintiff has not set forth sufficient facts to allege these claims. For the reasons outlined below, Defendant's Motion to Dismiss as to these claims should be denied.

### A. Count V Sufficiently Alleges Claims for Negligent Hiring, Retention, Training, and Supervision and Should Not Be Dismissed.

Defendants claim that Count V, which asserts claims for negligent hiring, retention, training and supervision must be dismissed because these tort claims require that the conduct be conducted outside the scope of the employment.

Unlike the cases cited by Defendants, *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017) and *Delaurentos v. Peguero*, 47 So.3d 879, 882 (Fla. 3d DCA 2010), there is no affirmative

---

[2] Contrast this with *Reed v. Clough*, 694 F. App'x 716, 726 (11th Cir. 2017), where the Eleventh Circuit discussed the "the heightened Fourteenth Amendment standard we now apply."

assertion in Count V that the conduct of Dunn and others were done within the course and scope of his employment. Thus, Count V should not be dismissed because Johnson has not specifically alleged that the conduct relevant to this Count was done within the scope of his employment.

      **B.**      **Count VII Properly States That The Unnecessary Violent Arrest of Plaintiff Constituted Intentional Infliction of Emotional Distress.**

Dunn claims that Count VII for intentional infliction of emotional distress should be dismissed because he does not think his conduct was extreme and outrageous. Unlike *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985) relied upon by Dunn, where the defendant "did no more than assert legal rights in a legally permissible way," in this case, Dunn forcibly arrested a person who had done nothing wrong. This is exactly the type of conduct "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* (quoting section 46, Restatement (Second) of Torts (1965).

This case is similar to *Haberski v. Bufano*, 728 F. App'x 903, 909 (11th Cir. 2018) where the Eleventh Circuit evaluated a claim of intentional infliction of emotional distress associated with an excessive force claim. In *Haberski*, the Eleventh Circuit held that using force to arrest someone who is not hostile and not violent toward the deputies can show a wanton and willful disregard of human rights sufficient to support an intentional infliction of emotional distress claim. *Id.*

In this case, as set forth in detail above, Johnson had a human and constitutional right to be free from unnecessary violence. *See Norwell v. City of Cincinnati, Ohio*, 414 U.S. 14, 16, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973)("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer.").

Dunn, immediately upon encountering Johnson, threatened him with violence. And even though Johnson's father had already identified Johnson, Dunn nonetheless stated he was "going to take him no matter what." Then Dunn violently arrested Johnson despite the fact that he was voluntarily exiting the vehicle as requested. The arrest of Dunn was unnecessary and is exactly the type of unnecessary and unjustified physical confrontation by law enforcement that leads to outrage in the community.

### C. Counts VII and X Are Proper Common Law Battery Claims.

Counts VII and X assert battery claims against Dunn and the Sheriff. Defendants claim that Dunn did not use excessive force. However, "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." *Hadley v. Gutierrez,* 526 F.3d 1324, 1330 (11th Cir 2008); *see also Stephens v. DeGiovanni*, 852 F.3d 1298, 1327–28 (11th Cir. 2017)("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands"); *Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th Cir. 1997)(explaining that if the court must assume that the plaintiff was offering no resistance, the amount of force used was "obviously unnecessary to restrain even a previously fractious arrestee"). Further, it is black letter law that "common-law battery does not require 'force capable of causing physical pain or injury.'" *Stokeling v. United States*, 139 S. Ct. 544, 553, 202 L. Ed. 2d 512 (2019). Under Florida law, "a battery is defined as an unlawful touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof." *McDonald v. Ford*, 223 So. 2d 553, 555 (Fla. 2d DCA 1969).

In this case, Johnson alleges that he was compliant with the demands of the officers and was in no way resisting arrest and he was subjected to violent force during his arrest which was unnecessary and intended to cause harm or the fear of harm.  Johnson has alleged the necessary elements of a battery and Counts VII and X should stand.

      **D.**    **Plaintiff's Negligence Claim is Sufficiently Pled.**

Defendant claims that Count IX for Negligence should be dismissed because the count "does not contain sufficient ultimate facts."  The Federal Rules of Civil Procedure, unlike the Florida Rules of Civil Procedure, eliminated the ultimate fact requirement and changed the philosophy behind the plaintiff's complaint and the defendant's answer.  In place of ultimate facts, Rule 8 (a)(2) provides that the complaint shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint alleges that the violent arrest of Johnson under these circumstances caused injury to his hand and economic damages [Complaint ¶¶102, 143].  In this case, Johnson has set forth a short and plain statement which is sufficient.  Therefore, the motion should be denied as to this count as well.

      **E.**    **Defendants Do Not Address Counts XI and XIII**

Defendants do not substantially address Counts XI and XII, which are common law claims for false imprisonment; however, to the degree necessary, as set forth above, there was not probable cause to support the arrest.

      **V.**    **<u>Plaintiff Must Be Permitted to Amend the Complaint</u>**

To the degree that the Court dismisses any of the counts, the dismissal should be without prejudice and Johnson should be permitted to amend the compliant to address any concerns identified by the Court.  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir.

14

2018)("district court must generally permit a plaintiff an opportunity to cure deficiencies before dismissing a claim or complaint with prejudice.").

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

/s/ Ryan D. Barack
**Ryan D. Barack**
Florida Bar No. 0148430
rbarack@employeerights.com
Jackie@employeerights.com
**Michelle Erin Nadeau**
Florida Bar No. 0060396
mnadeau@employeerights.com
Jackie@employeerights.com
**Kwall Barack Nadeau PLLC**
304 S. Belcher Rd., Suite C
Clearwater, Florida 33765
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via the Court's CM/ECF system on August 20, 2020 to all counsel of record.

/s/ Ryan D. Barack
**Attorney**