UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARQUES A. JOHNSON,

    Plaintiff,

v.                                              Case No. 8:20-cv-1370-T-60JSS

CHRIS NOCCO, in his official capacity
as Sheriff, Pasco County, Florida, and
JAMES DUNN, in his individual capacity,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS TO DISMISS**

This matter is before the Court on the "Motion to Dismiss the Complaint by Defendants Deputy Dunn and Sheriff with Supporting Memorandum of Law," filed on July 23, 2020. (Doc. 14). On August 20, 2020, Plaintiff Marques A. Johnson filed his response in opposition. (Doc. 20). Upon review of the motion, response, court file, and record, the Court finds as follows:

**Background**[1]

Plaintiff Marques A. Johnson is suing Deputy James Dunn, in his individual capacity, and Sheriff Chris Nocco, in his official capacity (collectively, "Defendants") for alleged constitutional violations and related state law negligence and tort claims following his arrest on August 2, 2018. At the time of the incident, Plaintiff was a passenger in a vehicle driven by his father. Deputy Dunn initiated a traffic stop,

---

[1] The Court construes the facts in light most favorable to the Plaintiff for the purpose of ruling on the motion to dismiss.

claiming that he could not see the license plate because it was obstructed by a trailer. Deputy Dunn was accompanied by two other deputies and a film crew from the A&E television show "Live PD."

After initiating the traffic stop, Deputy Dunn approached the passenger side of the vehicle and requested the driver's license and vehicle registration. Deputy Dunn also asked Plaintiff if he had his identification. Plaintiff advised Deputy Dunn that he was only a passenger and was not required to identify himself. Deputy Dunn told Plaintiff that under Florida law, Plaintiff was required to identify himself, and that if he did not do so, Deputy Dunn would remove him from the vehicle and arrest him for resisting. Another officer repeated these claims and told Plaintiff that he needed to identify himself. At the request of law enforcement, Plaintiff's father identified Plaintiff as his son and provided Plaintiff's name to the officers.

The officers then decided to do "a sniff with the dog," and asked Plaintiff and his father to exit the vehicle. As Plaintiff began to exit the vehicle, Deputy Dunn said to another officer that he was "going to take him no matter what because he's resisting. . . ." Deputy Dunn directed Plaintiff to put his hands behind his back and handcuffed him. When Plaintiff asked why he was being arrested, Deputy Dunn stated that it was for resisting without violence by not giving his name when it was demanded. Deputy Dunn then conducted a pat-down search and placed Plaintiff in the back of a police car.

While Plaintiff was in the police car, law enforcement officers brought a dog

to sniff the outside and claim that the dog "alerted" on the passenger side door. However, officers did not find any drugs in the vehicle. Deputy Dunn also searched Plaintiff's wallet, took his identification, and entered his name into a computer. Deputy Dunn again stated that Plaintiff was being arrested because of his refusal to provide his identification, claiming that Florida law requires all occupants of vehicles to give their names. Plaintiff was taken to Pasco County Jail and charged with the misdemeanor crime of resisting without violence, a violation of § 843.02, *F.S.* The criminal case was ultimately dismissed.

## **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

## Analysis

### *Counts I and III - § 1983 Claims Against Deputy Dunn*

Plaintiff alleges § 1983 violations against Deputy Dunn, including claims based on false arrest and due process. In his motion, Deputy Dunn argues that he is entitled to qualified immunity because there was actual probable cause to arrest Plaintiff for resisting without violence. Because Deputy Dunn was working under the authority of the Pasco County Sheriff's Office at the time of the incident, Plaintiff must overcome his right to claim qualified immunity. *See Cornett v. City of Lakeland*, No. 8:06-cv-2386-T-17TBM, 2008 WL 2740328, at *7 (M.D. Fla. July 10, 2008).

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (internal quotation omitted). Consequently, it is important to resolve questions of immunity at the "earliest possible stage in litigation." *Id*. at 231. As the United States Supreme Court has explained,

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances

> two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Id.* (internal quotations and citations omitted).

To overcome a qualified immunity defense, a plaintiff must establish (1) the allegations make out a violation of a constitutional right; and (2) if so, the constitutional right was clearly established at the time of the defendant's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *Corbitt*, 929 F.3d at 1311. However, courts may exercise their discretion when deciding which of the two prongs should be addressed first, depending upon the unique circumstances in each particular case. *Pearson*, 555 U.S. at 236; *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). In fact, a court "may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law without resolving the often more difficult question whether the purported right exists at all." *See Reichle v. Howards*, 566 U.S. 658, 665 (2012).

"For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Corbitt*, 929 F.3d at 1311 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). After all, officials are not obligated "to be creative or imaginative in drawing analogies from previously decided cases," and a general "awareness of an abstract right . . . does not equate to knowledge that [an official's]

conduct infringes the right." *Id.* at 1311-12 (quoting *Coffin v. Brandau*, 642 F.3d 999, 1015 (11th Cir. 2011)). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Shuford v. Conway*, 666 F. App'x 811, 816-17 (11th Cir. 2016) (quoting *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

<u>Count I: § 1983 False Arrest – Fourth Amendment Claim</u>

Because the Court is considering the qualified immunity issue at this stage of the proceedings, it relies on the well-pleaded facts alleged by Plaintiff in his complaint. It is important to note that there is no dispute that Deputy Dunn was acting within the scope of his discretionary authority when he arrested Plaintiff. However, viewing the facts in light most favorable to Plaintiff – as the Court is required to do at the motion to dismiss stage – the arrest of Plaintiff was unlawful.

An officer who makes an arrest without actual probable cause is still entitled to qualified immunity in a § 1983 action if there was "arguable probable cause" for the arrest. *Brown v. City of Huntville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). "Arguable probable cause exists if, under all of the facts and circumstances, an officer reasonably could – not necessarily would – have believed that probable cause was present." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

Based on the facts alleged in the complaint, Deputy Dunn had probable cause to initiate a traffic stop based on the obstruction of the license plate. *See* § 316.605(1), *F.S.*; *English v. State*, 191 So. 3d 448, 451 (Fla. 2016). He also had a

valid basis to briefly detain both Plaintiff and his father who was driving the vehicle. *See, e.g., Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (temporary detention of driver and passengers during traffic stop remains reasonable for duration of the stop); *Presley v. State*, 227 So. 3d 95, 106 (Fla. 2017) (holding that officers may temporarily detain passengers during reasonable duration of traffic stop).

Deputy Dunn had a valid basis to require the driver to provide identification and vehicle registration. *See, e.g., id.* (explaining that during a routine traffic stop, a reasonable duration of time is the length of time necessary for law enforcement to check the driver license, vehicle registration, and proof of insurance; determine whether there are outstanding warrants; and write and issue any citations or warnings). Deputy Dunn did not, however, have a valid basis to also require a passenger, such as Plaintiff, to provide identification, absent a reasonable suspicion that the passenger had committed, was committing, or was about to commit a criminal offense. *See* § 901.151(2), *F.S.* (officer may detain person for purpose of ascertaining identity when officer reasonably believes person has committed, is committing, or is about to commit a crime); *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 188 (2004) (holding that an officer may not arrest an individual for failing to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop); *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (holding that an individual is not required to provide information, including his identification, to law enforcement officer who lacks probable cause to arrest);

*Brown v. Texas*, 443 U.S. 47, 52-3 (1979) (holding that law enforcement cannot stop and demand identification from individual without a specific basis for believing he is involved in criminal activity); *Young v. Brady*, 793 F. App'x 905, 909 (11th Cir. 2019) (explaining that although an officer may question a person at any time, the individual can ignore the questions and go his way without providing the necessary objective grounds for reasonable suspicion).

It appears that Florida courts have not specifically held that law enforcement officers may require passengers to provide identification during traffic stops absent a reasonable suspicion that the passenger had committed, was committing, or was about to commit a criminal offense. The facts, viewed in the light most favorable to the Plaintiff, do not involve a claim that Plaintiff had committed, was committing, or was about to commit a crime. Courts in other jurisdictions have specifically held that law enforcement officers may *not* require passengers to provide identification during traffic stops, absent reasonable suspicion of criminal activity. *U.S. v. Landeros*, 913 F.3d 862 (9th Cir. 2019); *Stufflebeam v. Harris*, 521 F.3d 884 (8th Cir. 2008).[2]

Pursuant to existing law on this point, Plaintiff had no obligation to talk to or identify himself to Deputy Dunn.[3] Because Officer Dunn did not have a valid basis

---

[2] Although *Landeros* and *Stufflebeam* arose under the laws of Arizona and Arkansas respectively, Florida would not follow a different approach because the ultimate source of authority on this issue is the Fourth Amendment as interpreted by the U.S. Supreme Court, not a specific provision of Florida law. "In 1982, the Florida Constitution was amended to provide that Florida courts would follow the United States Supreme Court's decisions in addressing search and seizure issues. *See Perez v. State,* 620 So.2d 1256, 1258 (Fla.1993)." *State v. Jacoby*, 907 So. 2d 676, 680 (Fla. 2d DCA 2005).
[3] That being said, the Court notes that under Plaintiff's version of events, although he did

to require Plaintiff to provide identification, he could not arrest Plaintiff based on a failure or refusal to provide such identification. Moreover, "no Florida court has found probable cause to arrest a person for obstruction solely on the basis of a refusal to answer questions related to an ongoing investigation." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1286 (M.D. Fla. 2011).

Therefore, the Court finds that, under the well-pled facts of the complaint, Plaintiff had a legal right to refuse to provide his identification to Deputy Dunn. As such, Deputy Dunn had neither actual probable cause nor arguable probable cause to arrest Plaintiff. The Court further finds that based on the Fourth Amendment itself and the case law discussed, the law was clearly established at the time of the arrest. Deputy Dunn is not entitled to qualified immunity, and the motion to dismiss is denied as to this ground.

### Count III: § 1983 False Arrest - Fourteenth Amendment Claim

Deputy Dunn argues that Plaintiff cannot state a cause of action under the Fourteenth Amendment. The Court agrees. Pretrial detainees enjoy the protection afforded by the Due Process Clause of the Fourteenth Amendment, which ensures that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV. To the extent that Plaintiff alleges his Fourteenth Amendment rights were violated during his arrest, the Court finds that he cannot state a claim for relief because he was not a pretrial detainee at the

---

not personally identify himself, his father actually provided his information prior to his arrest. So even assuming that there was a lawful basis to require such identification, this information was provided to law enforcement officers.

time the arrest occurred.  *See, e.g., C.P. by and through Perez v. Collier Cty.*, 145 F. Supp. 3d 1085, 1091-92 (M.D. Fla. 2015) (dismissing Fourteenth Amendment claim where allegations of excessive force solely related to excessive force used during arrest of the plaintiff).  Consequently, the motion to dismiss is due to be granted as to this ground.  Count III is dismissed with prejudice, with no leave to amend.

***Counts II and IV - § 1983 Claims Against Sheriff Nocco***

<u>Count II: § 1983 False Arrest – Fourth Amendment Claim</u>

In his motion, Sheriff Nocco argues that Counts II and IV should be dismissed because Plaintiff has failed to sufficiently allege *Monell* claims by failing to allege a pattern of similar constitutional violations.  Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Municipalities can only be held liable, however, where "action pursuant to official municipal policy of some nature caused a constitutional tort;" it cannot be liable under § 1983 on a *respondeat superior* theory because it employs a tortfeasor.  *Id.* at 691.  "Supervisor liability arises only 'when the supervisor personally participates in the allege constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'"  *Gross v. Jones*, No. 3:18-cv-594-J-39PDB, 2018 WL 2416236, at *4 (M.D. Fla. May 29, 2018) (quoting *Mathews v. Crosby*, 480 F.3d 1265,

1270 (11th Cir. 2007)). Consequently, "to impose § 1983 liability on a local government body, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the entity had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Scott v. Miami-Dade Cty.*, No. 13-CIV-23013-GAYLES, 2016 WL 9446132, at *3 (S.D. Fla. Dec. 13, 2016).

To demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient." *Id*. at *4. The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation omitted). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id*. (internal quotation and citation omitted).

Plaintiff alleges that his constitutional rights were violated through a custom or policy of the Sheriff – namely, a failure to adequately train and supervise deputies who are arresting people without sufficient probable cause. Plaintiff alleges that each of the officers at the scene incorrectly believed that Plaintiff could be arrested for failing to provide identification even though there was no legal basis

to demand such identification since he was only a passenger in the vehicle and was not suspected of criminal activity. Plaintiff also alleges that Sheriff Nocco created the position of Constitutional Policing Advisor to guide the Sheriff through, and make recommendations on, the best practices, policies, and procedures. The Advisor also conducts investigations and responds as necessary to critical incidents. Plaintiff alleges that the Advisor opined that Plaintiff was lawfully detained during the traffic stop, lawfully required to provide his identification, and lawfully arrested for resisting without violence for refusing to do so.

Although Plaintiff does not allege a pattern of similar constitutional violations by untrained employees, such allegation is not necessarily required to support a § 1983 claim in this case. Plaintiff alleges that the supervisor – here, Sheriff Nocco – directed his subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to prevent them from doing so. *See id.* Plaintiff, in fact, contends that the Sheriff ratified this conduct through his Constitutional Policing Advisor. These allegations are sufficient to state a *Monell* claim. The motion to dismiss is denied as to this ground.

### Count IV: § 1983 False Arrest - Fourteenth Amendment Claim

As the Court previously discussed, Plaintiff cannot state a claim for relief under the Fourteenth Amendment because he was not a pretrial detainee at the time the arrest occurred. The motion to dismiss is due to be granted as to this ground. Count IV is dismissed with prejudice, with no leave to amend.

*Count V – Negligent Hiring, Retention, Training and Supervision Against Sheriff Nocco*

In the motion, Sheriff Nocco argues that he is entitled to dismissal of Count V because Deputy Dunn's allegedly wrongful conduct was not committed outside the scope of his employment with the Sheriff's Office.[4]  "Under Florida law, a claim for negligent hiring, retention, or supervision requires that an employee's wrongful conduct be committed outside the scope of employment."  *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017).  In Count V, Plaintiff does not allege or explain how Deputy Dunn was acting outside the scope of his employment.  As such, the Court finds that the negligent hiring, retention, and supervision claims of this count are facially insufficient.  Count V is dismissed without prejudice, with leave to amend.

In addition, the Court finds, *sua sponte*, that this count constitutes a shotgun pleading.  A shotgun pleading is one where "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" and the defendant therefore cannot be "expected to frame a responsive pleading."  *See Anderson v. Dist. Bd. Of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 366 (11th Cir. 1996).  The Eleventh Circuit has identified four primary types of shotgun

---

[4] In the motion itself, Sheriff Nocco briefly asserts that he is entitled to dismissal of the negligent hiring and retention claims of Count V "because of a lack of factual allegations that would plausibly suggest that Sheriff was on notice of, or reasonably could have foreseen, any harmful propensities or unfitness for employment of Deputy Dunn […]."  He also broadly asserts that he is entitled to dismissal of the negligent training claim because the claim "necessarily involves discretionary government policy making choices, and is thus protected by sovereign immunity."  Those arguments were not further discussed or elaborated upon in the memorandum, and the Court does not address them.  However, Sheriff Nocco is not precluded from raising these arguments in future filings if appropriate.

pleadings. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). A district court must generally permit a plaintiff at least one opportunity to amend a shotgun complaint's deficiencies before dismissing the complaint with prejudice. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

In this count, Plaintiff alleges negligent hiring, negligent training, negligent retention, and negligent supervision. Those are four different concepts. This improper mixing of claims makes it difficult for Defendants to respond accordingly and present defenses, and for the Court to appropriately adjudicate this case. In any amended complaint, Plaintiff should separate his causes of action into separate counts.

*Count VI – Malicious Prosecution Against Deputy Dunn*

In the motion, Deputy Dunn argues that Count VI should be dismissed because actual probable cause existed to support Plaintiff's arrest. Under Florida law, the elements of the tort of malicious prosecution are: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). A

plaintiff's failure to establish any one of these elements is fatal to a malicious prosecution claim. *Eiras v. Baker*, No. 3:16-cv-231-J-34PDB, 2019 WL 423319, at *17 (M.D. Fla. Feb. 4, 2019).

In his complaint, Plaintiff has alleged facts showing that Deputy Dunn lacked probable cause to arrest him for obstruction without violence. However, "[a] police officer who arrests a suspect but does not make the decision of whether or not to prosecute cannot be liable for malicious prosecution under § 1983." *DeRosa v. Rambosk*, 732 F. Supp. 2d 1285, 1301 (M.D. Fla. Aug. 11, 2010) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994)). In Florida, the decision to criminally prosecute people who are arrested by law enforcement is vested in elected State Attorneys, not the arresting law enforcement agencies themselves. In this case, there are no allegations that Deputy Dunn was in any way involved in the decision to prosecute Plaintiff. As such, Count VI is dismissed without prejudice, with leave to amend.

### *Count VII – Intentional Infliction of Emotional Distress Against Deputy Dunn*

In the motion, Deputy Dunn argues that he is entitled to dismissal of Count VII because the alleged facts do not establish that his actions were so extreme in degree as to go beyond all possible bounds of decency to support a claim for intentional infliction of emotional distress. The Court agrees.

Under Florida law, to establish a claim for intentional infliction of emotional distress, a plaintiff must allege and prove the following elements: (1) the conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused

emotional distress; and (4) the emotional distress was severe. *Frias*, 823 F. Supp. at 1288. Whether the conduct is sufficiently outrageous – that is to say, goes beyond all "bounds of decency" and is to be regarded as "odious and utterly intolerable in a civilized community" – is not a question of fact but rather a matter of law to be determined by the court. *See id*. A plaintiff attempting to state a claim for intentional infliction of emotional distress bears a heavy burden, particularly when alleging facts that rise to the requisite level of outrageousness.

In this case, Plaintiff has not met the high standard required to show that Deputy Dunn's conduct was "beyond all bounds of decency" or that Plaintiff suffered "severe distress." *See, e.g., Casado v. Miami-Dade Cty.*, 340 F. Supp. 3d 1320, 1332-33 (S.D. Fla. 2018) (dismissing emotional distress claim after concluding that officers' alleged conduct in repeatedly punching arrestee the face, slamming him into the hood of a car, arresting him without probable cause, and fabricating evidence against him was not sufficiently outrageous); *Frias*, 823 F. Supp. 2d at 1289 ("While being subject to false arrest is embarrassing, it is not sufficiently extreme and outrageous absent some other grievous conduct."). Consequently, the motion to dismiss is due to be granted as to this ground. Count VII is dismissed without prejudice, with leave to amend.

### *Counts VIII and X – Battery Against Deputy Dunn and Sheriff Nocco*

In the motion, Defendants contend that Counts VIII and X should be dismissed because Deputy Dunn was privileged to use the force used in effecting the arrest. "If during an arrest excessive force is used, 'the ordinarily protected use of

force by a police officer is transformed into a battery.'" *Prescott v. Greiner*, No. 8:16-cv-060-T-27TBM, 2016 WL 8919457, at *4 (M.D. Fla. June 29, 2016) (quoting *Essex Ins. Co. v. Big Top of Tampa, Inc.*, 53 So. 3d 1220, 1223 (Fla. 2d DCA 2011)). When analyzing a battery claim based on excessive force, a court considers "whether the amount of force used was reasonable under the circumstances." *Id*. (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996)); *see also Prescott v. Oakley*, No. 8:16-cv-060-T-27TBM, 2016 WL 8919458, at *4 (M.D. Fla. Dec. 6, 2016) (dismissing battery claims against deputies because factual allegations regarding events were insufficient to show use of force was unreasonable).

In this case, Plaintiff has failed to sufficiently allege facts to demonstrate that the level of force used was unreasonable under the circumstances. As a result, the motion to dismiss is granted as to this ground. Count VIII is dismissed without prejudice, with leave to amend. Because the battery claim against Deputy Dunn is dismissed, Count X against the Sheriff – based on a theory of vicarious liability – will also be dismissed, with leave to amend. *See id*.

*Count IX – Negligence Against Sheriff Nocco*

In the motion, Sheriff Nocco argues that he is entitled to dismissal of Count IX because Plaintiff has failed to sufficiently allege a duty of care and damages. Although Plaintiff generally alleges that the Sheriff owed him a "duty of care," the nature of the duty is vague and unclear. It is also unclear what and how Sheriff Nocco breached any alleged duty to Plaintiff, and the damages that were sustained as a result of the alleged negligence. As a result, the motion is granted as to this

ground. Count IX is dismissed without prejudice, with leave to amend. Plaintiff should take care to not plead duplicative counts against the Sheriff, and if he decides to refile this count, he should ensure that this claim is distinguishable from Count V (negligent hiring, retention, training, and supervision).

***Counts XI and XII – False Imprisonment and Arrest Against Deputy Dunn and Sheriff Nocco***

In the motion, Defendants argue that Count XI should be dismissed because actual probable cause existed to support Plaintiff's arrest. "Under Florida law, false arrest and false imprisonment are different labels for the same cause of action." *Artubel v. Colonial Bank Group, Inc.*, No. 8:08-cv-179-T-23MAP, 2008 WL 3411785, at *9 (M.D. Fla. Aug. 8, 2008) (internal quotation omitted); *see also Anderson v. City of Groveland*, No. 5:15-cv-26-Oc-30PRL, 2015 WL 6704516, at *6 (M.D. Fla. Nov. 2, 2015). "[T]he existence of probable cause is an absolute bar to a claim for false arrest or false imprisonment." *Id*.

In his complaint, Plaintiff has alleged facts showing that Deputy Dunn lacked probable cause to arrest him for obstruction without violence. As such, Plaintiff's claims for false imprisonment and false arrest against Defendants may proceed at this time. The motion to dismiss is denied as to these grounds.

It is therefore

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The "Motion to Dismiss the Complaint by Defendants Deputy Dunn and Sheriff with Supporting Memorandum of Law" (Doc. 14) is hereby **GRANTED IN PART** and **DENIED IN PART**.

(2) The motion is **GRANTED** as to Counts III, IV, V, VI, VII, VIII, IX, and X.

(3) Counts III and IV of Plaintiff's complaint are **DISMISSED WITH PREJUDICE**.

(4) Counts V, VI, VII, VIII, IX, and X of Plaintiff's complaint are **DISMISSED WITHOUT PREJUDICE**, with leave to amend.

(5) The motion is **DENIED** as to Counts I, II, XI, and XII.

(6) Plaintiff is directed to file an amended complaint to correct the pleading deficiencies identified in this Order on or before November 30, 2020. Failure to file an amended complaint by the deadline will result in this Order becoming a final judgment as to Counts V, VI, VII, VIII, IX, and X. *See Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 719-20 (11th Cir. 2020).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of November, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**