UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARQUES A. JOHNSON,

    Plaintiff,

v.                                            Case No. 8:20-cv-1370-TPB-CPT

CHRIS NOCCO, in his official capacity
as Sheriff, Pasco County, Florida, and
JAMES DUNN, in his individual capacity,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
"PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT"
AND ORDER DENYING "DEFENDANTS' AMENDED
MOTION FOR SUMMARY JUDGMENT"**

This matter is before the Court on "Plaintiff's Motion for Partial Summary Judgment" (Doc. 116), filed on August 29, 2025, and "Defendants' Amended Motion for Summary Judgment" (Doc. 120), filed on September 5, 2024. The parties filed responses in opposition and replies. (Docs. 123; 124; 125; 126). Upon review of the motions, responses, replies, court file, and record, the Court finds as follows:

**Factual Background**

Plaintiff Marques A. Johnson sues Sheriff Chris Nocco, in his official capacity, and Deputy James Dunn, in his individual capacity, for alleged constitutional violations and related state law tort claims following Plaintiff's arrest on August 2, 2018. At the time of the incident, Plaintiff was a passenger in a vehicle driven by his father. Deputy Dunn of the Pasco County Sheriff's Office

initiated a traffic stop, claiming that he could not see the license plate because it was obstructed by a trailer. Deputy Dunn was accompanied by two other deputies and a film crew from the A&E television show "Live PD."

After initiating the traffic stop, Deputy Dunn approached the passenger side of the vehicle and requested the driver's license and vehicle registration. Deputy Dunn also asked Plaintiff if he had his identification. Plaintiff advised Deputy Dunn that he was only a passenger and was not required to identify himself. Deputy Dunn told Plaintiff that under Florida law, Plaintiff was required to identify himself, and that if he did not do so, Deputy Dunn would remove him from the vehicle and arrest him for resisting. Another officer repeated these claims and told Plaintiff that he needed to identify himself. At the request of law enforcement, Plaintiff's father identified Plaintiff as his son and provided Plaintiff's name to the officers.

The officers then decided to do "a sniff with the dog," and asked Plaintiff and his father to exit the vehicle. As Plaintiff began to exit the vehicle, Deputy Dunn said to another officer that he was "going to take him no matter what because he's resisting. . . ." Deputy Dunn directed Plaintiff to put his hands behind his back and handcuffed him. When Plaintiff asked why he was being arrested, Deputy Dunn stated that it was for resisting without violence by not giving his name when it was demanded. Deputy Dunn then conducted a pat-down search and placed Plaintiff in the back of a police car.

While Plaintiff was in the police car, law enforcement officers brought a dog to sniff the outside and claim that the dog "alerted" on the passenger side door.

However, officers did not find any drugs in the vehicle. Deputy Dunn also searched Plaintiff's wallet, took his identification, and entered his name into a computer. Deputy Dunn again stated that Plaintiff was being arrested because of his refusal to provide his identification, claiming that Florida law requires all occupants of vehicles to give their names. Plaintiff was taken to Pasco County Jail and charged with the misdemeanor crime of resisting without violence, a violation of § 843.02, *F.S.* The criminal case was ultimately dismissed.

**Procedural History**

This case was initially filed on June 15, 2020. On November 13, 2020, the Court dismissed two of Plaintiff's claims with prejudice (Counts III and IV), and several claims without prejudice, with leave to amend (Counts V, VI, VII, VIII, IX, and X). Plaintiff filed an amended complaint on November 30, 2020. On February 18, 2021, the Court granted in part and denied in part Defendant's motion to dismiss. The motion was granted as to Counts III, IV, VI, VII, and VIII, which were dismissed with prejudice. The motion was otherwise denied, and the Court specifically ruled that Deputy Dunn was not entitled to qualified immunity as part of its Order.

Deputy Dunn filed an interlocutory appeal of the Court's qualified immunity determination, and the proceedings were stayed during the pendency of the appeal. On October 10, 2023, the Eleventh Circuit Court of Appeal issued a split opinion ultimately concluding that Deputy Dunn was entitled to qualified immunity, but no mandate was issued at that time. Significantly, Judge Branch concurred only in the judgment of the majority. On January 30, 2024, the panel vacated their prior

opinion and issued a new opinion. Again, Judge Branch concurred only in the judgment and clarified that she agreed with the result for different reasons than Judge Tjoflat. Her concurrence reiterated that because none of the three opinions garnered a majority vote of the panel, none represent the views of the Court for precedent purposes. The Court mentions this history to emphasize that one of the primary issues discussed below – whether there was a violation of a clearly established constitutional right – was not resolved as part of the interlocutory appeal.[1] The mandate was issued on May 6, 2024.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable

---

[1] As articulated in the parties' summary judgment filings and at in-person hearings, the parties agree that the issue remains unresolved and requires further consideration.

inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion separately, resolving all reasonable inferences against the party whose motion is under consideration. *Id*. "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).

## Analysis

### *Count II - § 1983 Claim for False Arrest Against Sheriff Nocco*

Plaintiff alleges a § 1983 violation against Sheriff Nocco based on his allegedly false arrest that was made without sufficient probable cause. Sheriff Nocco argues that Plaintiff cannot establish either a constitutional violation or a policy or custom that was the moving force behind the constitutional violation. Plaintiff argues that the undisputed evidence establishes the Sheriff's liability under *Monell*.

Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a governmental 'custom' even though such a custom has not received formal approval

through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Municipalities can only be held liable, however, where "action pursuant to official municipal policy of some nature caused a constitutional tort;" it cannot be liable under § 1983 on a *respondeat superior* theory because it employs a tortfeasor. *Id*. at 691. Supervisor liability arises only "when the supervisor personally participates in the allege constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). Consequently, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

<u>Constitutional Violation</u>

Based on the undisputed facts, Deputy Dunn had probable cause to initiate a traffic stop based on the obstruction of the license plate. *See* § 316.605(1), *F.S.*; *English v. State*, 191 So. 3d 448, 451 (Fla. 2016). Based on the undisputed facts, Deputy Dunn had a valid basis to briefly detain both Plaintiff and his father who was driving the vehicle. *See, e.g., Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (temporary detention of driver and passengers during traffic stop remains reasonable for duration of the stop); *Presley v. State*, 227 So. 3d 95, 106 (Fla. 2017) (holding that officers may temporarily detain passengers during reasonable

duration of traffic stop).

Deputy Dunn had a valid basis to require the driver to provide identification and vehicle registration. *See, e.g.*, *id.* (explaining that during a routine traffic stop, a reasonable duration of time is the length of time necessary for law enforcement to check the driver license, vehicle registration, and proof of insurance; determine whether there are outstanding warrants; and write and issue any citations or warnings).

Deputy Dunn did not, however, have a valid basis to also require a passenger, such as Plaintiff, to provide identification, absent a reasonable suspicion that the passenger had committed, was committing, or was about to commit a criminal offense. *See* § 901.151(2), *F.S.* (officer may detain person for purpose of ascertaining identity when officer reasonably believes person has committed, is committing, or is about to commit a crime); *Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 188 (2004) (holding that an officer may not arrest an individual for failing to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop); *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (holding that an individual is not required to provide information, including his identification, to law enforcement officer who lacks probable cause to arrest); *Brown v. Texas*, 443 U.S. 47, 52-3 (1979) (holding that law enforcement cannot stop and demand identification from individual without a specific basis for believing he is involved in criminal activity); *Young v. Brady*, 793 F. App'x 905, 909 (11th Cir. 2019) (explaining that although an officer may question a person at any time, the individual can ignore the questions and go his way without providing the necessary

objective grounds for reasonable suspicion).

It appears that Florida courts have not specifically held that law enforcement officers may require passengers to provide identification during traffic stops absent a reasonable suspicion that the passenger had committed, was committing, or was about to commit a criminal offense. The undisputed facts do not involve a claim that Deputy Dunn believed at the time he asked for identification that Plaintiff had committed, was committing, or was about to commit a crime. Courts in other jurisdictions have specifically held that law enforcement officers may *not* require passengers to provide identification during traffic stops, absent reasonable suspicion of criminal activity. *U.S. v. Landeros*, 913 F.3d 862 (9th Cir. 2019); *Stufflebeam v. Harris*, 521 F.3d 884 (8th Cir. 2008).[2]

Pursuant to existing law on this point, Plaintiff had no obligation to talk to or identify himself to Deputy Dunn. Because Officer Dunn did not have a valid basis to require Plaintiff to provide identification, he could not arrest Plaintiff based on a failure or refusal to provide such identification. Moreover, "no Florida court has found probable cause to arrest a person for obstruction solely on the basis of a refusal to answer questions related to an ongoing investigation." *Frias v. Demings*, 823 F. Supp. 2d 1279, 1286 (M.D. Fla. 2011).

Therefore, the Court concludes that Plaintiff had a legal right to refuse to

---

[2] Although *Landeros* and *Stufflebeam* arose under the laws of Arizona and Arkansas respectively, Florida would not follow a different approach because the ultimate source of authority on this issue is the Fourth Amendment as interpreted by the United States Supreme Court, not a specific provision of Florida law. "In 1982, the Florida Constitution was amended to provide that Florida courts would follow the United States Supreme Court's decisions in addressing search and seizure issues." *State v. Jacoby*, 907 So. 2d 676, 680 (Fla. 2d DCA 2005) (citing *See Perez v. State,* 620 So.2d 1256, 1258 (Fla.1993)).

provide his identification to Deputy Dunn. As such, Deputy Dunn had neither actual probable cause nor arguable probable cause to arrest Plaintiff. An officer's mistake of law cannot provide objective grounds for probable cause or reasonable suspicion, even if the mistake of law is reasonable or grounded in good faith. *United States v. Chanthasouxat*, 342 F.3d 1271, 1279-80 (11th Cir. 2003). Consequently, the Court concludes that the undisputed facts establish a constitutional violation, and Plaintiff is entitled to summary judgment on this issue.

<u>Policy or Custom that Caused the Constitutional Violation</u>

To establish *Monell* liability, a plaintiff must also establish a policy or custom of the municipality that was the moving force behind the constitutional violation. "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). The policy or custom, however, does not need to receive formal approval. *Id.* (citing *Monell*, 436 U.S. at 691). The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation omitted). "Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation and citation omitted).

Defendants argue that there was no written or unwritten policy or custom of

the Sheriff that required passengers to identify themselves during traffic stops and directing an arrest of those who refused. Plaintiff argues that the undisputed facts show there was an official policy or, at the very least, a widespread custom which leadership was aware of, ratified, condoned, and did not correct.

Two corporate representatives of the Pasco County Sheriff's Office – Sanfra Johnson and Major Joseph Irizarry– testified during deposition that it was the Pasco County Sheriff's Office understanding that vehicle passengers may be ordered under threat of arrest by law enforcement to provide identification during a traffic stop. *See* (Doc. 116-7 at 44:6-47:15; Doc. 116-5 at 13:11-18).

Several deputies of the Pasco County Sheriff's Office testified at deposition that they believed that a passenger in a vehicle could be arrested for failing to provide identification. For instance, Deputy Dunn testified that it was his understanding that all passengers were required to identify themselves during a traffic stop, and that this was understanding was consistent with the policy of the Pasco County Sheriff's Office. Officers Ramos and Pini testified similarly, with Officer Ramos *noting that he was told so by leadership* at an informal training called a "read off" with a Pasco County Sheriff's Office attorney. Deputy Dunn and Deputy Pini both testified that they either made similar arrests or were aware of other arrests of passengers who refused to identify themselves. Deputy Ramos testified that he believed the arrest of Plaintiff was consistent with Pasco County Sheriff's Office policy, Florida law, and federal law, *and he believed so because of the trainings he had received from the Pasco County Sheriff's Office.*

In addition, Sheriff Nocco created a position titled "Constitutional Policing

Page 10 of 14

Advisor" to guide the Sheriff through, and make recommendations on, the best practices, policies, and procedures. The Advisor opined that Plaintiff was lawfully detained during the traffic stop, was lawfully required to provide his identification, and was lawfully arrested for resisting without violence when Plaintiff refused to do so.

Interestingly, this alleged policy or custom of the Pasco County Sheriff's Office appears to directly contradict law enforcement training provided by the State of Florida. Deputy Dunn testified that he attended the law enforcement academy at Pasco/Hernando State College from 2016 until 2016. The official written training manual at that time explicitly stated that "[t]he driver is the only occupant of the vehicle compelled to provide documentation, unless other occupants are suspected of a crime or violation."[3] (Doc. 116-8 at 437). Deputy Dunn further testified that at the time he was trained, passengers were not detained, but that he later received information from the Pasco County Sheriff's Office that "everyone in the vehicle is detained and everyone has to identify themselves." (Doc. 116-1 at 24:12-25:23).

Given the undisputed facts, and considering the testimony of Defendants' own corporate representatives and officers, Plaintiff is not required to show further proof of multiple incidents to prove a custom in this case. *See Brown v. City of Atlanta*, 284 F. Supp. 3d 1326, 1335 (N.D. Ga. 2018), *vacated in part, appeal dismissed in part sub nom. Brown v. City of Atlanta, Georgia*, 778 F. App'x 728

---

3 The most recent manual contains the same explanation of the law on this point. (Doc. 116-9 at 459).

(11th Cir. 2019).

Based on this evidence, a reasonable jury could find that the Pasco County Sheriff's Office had a custom or policy that was the moving force behind a constitutional violation. But the Court does not believe that this evidence *conclusively* establishes a custom or policy as a matter of law, and it appears a jury could reasonably find that there was no custom or policy of the Sheriff's Office. That is, the Court believes that an issue of fact precludes summary judgment on this point. Defendants' motion for summary judgment and Plaintiff's motion for summary judgment are therefore denied as to this ground.

***Malicious Prosecution Against Deputy Dunn (Count V)***

Defendants argue that because probable cause existed for Plaintiff's arrest, his malicious prosecution claim is barred. As discussed above, the Court finds that, as a matter of law and based on the undisputed facts, there was no probable cause to support Plaintiff's arrest. Defendants' motion for summary judgment is therefore denied as to this ground.

Deputy Dunn argues that he is additionally and independently entitled to immunity as to the malicious prosecution claim against him because there is no evidence that he acted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property. However, there is record evidence that a jury could rely on to find that Deputy Dunn acted in bad faith, including testimony from other law enforcement officers who were at the scene of the arrest. This issue is better reserved for the finder of fact, and Defendant's motion for summary judgment is denied as to this ground.

On the other hand, Plaintiff moves for summary judgment on liability on his state law claim of malicious prosecution against Deputy Dunn, arguing that the undisputed facts show that all six elements of the cause of action have been satisfied. Contrary to Plaintiff's assertion, the record evidence does not conclusively establish that Deputy Dunn acted with malice, which is a key issue as to both the substantive claim and Deputy Dunn's immunity defense under § 768.28(9)(a), *F.S.* Plaintiff's motion for summary judgment on the malicious prosecution claim is therefore denied.

### *False Imprisonment and Arrest Against Deputy Dunn (Count IX) and False Imprisonment and Arrest Against Sheriff Nocco (Count X)*

Defendants argue that they are entitled to summary judgment on Plaintiffs' state law claims for false imprisonment and arrest claims against Sheriff Nocco and Deputy Dunn, presenting the same arguments as in the malicious prosecution claim. For the same reasons, their motion is denied.

Plaintiff asserts that he is entitled to summary judgment on liability on his state law claims. Because the Court has concluded that there was no probable cause to support his arrest, Plaintiff's detention was unlawful and without legal authority. However, Deputy Dunn claims immunity under § 768.28(9)(a), *F.S.*, and his immunity claim presents an issue of fact that must be resolved by a jury, as explained above. And Sheriff Nocco's liability appears to depend on the resolution of Deputy Dunn's immunity claim. Consequently, Plaintiff is not entitled to summary judgment on these claims, and his motion is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) "Plaintiff's Motion for Partial Summary Judgment" (Doc. 116) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that Plaintiff is entitled to summary judgment on the issue of whether there was a constitutional violation. The motion is otherwise **DENIED**.

(2) "Defendants' Amended Motion for Summary Judgment" (Doc. 120) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>3rd</u> day of November, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE